IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| **CITIZENS STATE BANK,** *Plaintiff,* v. **MICHAEL SCOTT LESLIE, MONTAGE MORTGAGE, LLC, SNOWBERRY SETTLEMENTS, LLC, MORTGAGE CAPITAL MANAGEMENT, LLC, TRAVELERS BOND AND SPECIALTY INSURANCE, TRAVELERS CASUALTY & SURETY COMPANY OF AMERICA, THE TRAVELERS INDEMNITY COMPANY,** *Defendants.* | § § § § § § § § § § § § § § § § | **CIVIL NO. 6-18-CV-00237-ADA** |

## <u>ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Before the Court is Plaintiff's Motion for Partial Summary Judgment (ECF No. 48), Defendant's Motion for Summary Judgment, (ECF No. 50), Plaintiff's Response (ECF No. 57), Plaintiff's Reply (ECF No. 70), and Defendant's Reply (ECF No. 72). After having reviewed the parties' briefs, case file, and applicable law, the Court has determined that Plaintiff's Motion for Partial Summary Judgment should be **GRANTED IN PART** and that Defendant's Motion for Summary Judgment should be **DENIED** for the following reasons.

### I. BACKGROUND

This is an insurance coverage dispute involving Citizens State Bank's ("Citizens") purchase of participation interests in twelve fraudulent mortgage loans from Montage Mortgage, LLC ("Montage"). ECF No. 48. Several players, which included Montage, Michael Scott Leslie, Snowberry Settlements, LLC ("Snowberry"), and Mortgage Capital Management, engaged in a

1

scheme that involved Citizens purchasing fake mortgage interests from Montage through Citizens' Temporary Mortgage Participation Program ("TMPP"). ECF No. 48. After discovering the fraud, Citizens sued Travelers for its losses under a Financial Institution Bond with Extended Coverage (the "Bond"). ECF No. 48. The Bond covers:

> Loss resulting directly from [Citizens] having, in good faith . . . given value . . . on the faith of any Original Written document that is a . . . deed, mortgage or other instrument conveying title to, or creating or discharging a lien on, real property . . . [or Evidence of Debt] which bears a handwritten signature of any maker . . . or of any person signing in any other capacity, which is a Forgery.

ECF No. 48. The Bond further reads: "[a]ctual physical possession of the items listed . . . above by [Citizens] is a condition precedent to [Citizens'] having relied on the faith of such items." ECF No. 48. However, "actual physical possession" of the required loan documents may be satisfied if either a "correspondent Financial Institution, or other representative authorized to possess" is in possession of such items at the time of the purchase. ECF No. 50.

In order for Plaintiff to recover under the Bond, Plaintiff must prove it meets three conditions: (1) "actual physical possession" of the original signed Note or Mortgage; (2) reliance upon the Note or Mortgage; and (3) it acted in good faith when it acquired its participation interests. *See generally* ECF No. 50. However, Citizens purchased Loan Participation Coverage, relaxing the "actual physical possession" condition. ECF No. 48. Therefore, the requirement that Citizens have "actual physical possession" of the original signed Note or Mortgage before purchasing a participation interest in Defendant Montage's Loans may be satisfied if one of the following had possession of the original signed Note or Mortgage: (1) Citizens itself; (2) Plaintiff's "representative authorized to possess" the Note or Mortgage; or (3) its correspondent financial institution. *See* Magistrate's Order, ECF No. 53.

On January 13, 2020, Citizens moved for partial summary judgment arguing that Citizens meets the Bond's requirements of "on the faith" reliance and "good faith" conduct. ECF No. 48. On January 17, 2020, Travelers moved for summary judgment arguing that Citizens is not entitled to coverage because it failed to meet the Bond's requirements. ECF No. 50

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014). A material fact is one that is likely to reasonably affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is not genuine if the trier of fact could not, after an examination of the record, rationally find for the non-moving party. *Matsushita Elec. Indus., Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). As such, the burden of demonstrating that no genuine dispute of material fact exists lies with the party moving for summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once presented, a court must view the movant's evidence and all factual inferences from such evidence in a light most favorable to the party opposing summary judgment. *Impossible Elecs. Techniques v. Wackenhut Protective Sys., Inc.*, 669 F.2d 1026, 1031 (5th Cir. 1982). Accordingly, the simple fact that the court believes that the non-moving party will be unsuccessful at trial is insufficient reason to grant summary judgment in favor of the moving party. *Jones v. Geophysical Co.*, 669 F.2d 280, 283 (5th Cir. 1982). However, "[w]hen opposing parties tell two different stories, but one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the

purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

Once the court determines that the movant has presented sufficient evidence that no genuine dispute of material fact exists, the burden of production shifts to the party opposing summary judgment. *Matsushita*, 475 U.S. at 586. The non-moving party must demonstrate a genuinely disputed fact by citing to parts of materials in the record, such as affidavits, declarations, stipulations, admissions, interrogatory answers, or other materials; or by showing that the materials cited by the movant do not establish the absence of a genuine dispute. FED. R. CIV. P. 56(C)(1)(A)–(B). "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy v. Leading Edge Prods.*, 44 F.3d 308, 312 (5th Cir. 1995). Moreover, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v.* Barr, 19 F.3d 1527, 1533 (5th Cir. 1994). After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted. *See* FED. R. CIV. P. 56; *Matsushita*, 475 U.S. at 586.

### III. ANALYSIS

Plaintiff argues Travelers wrongfully denied coverage because Citizens meets the Bond's conditions for coverage. ECF No. 48, Pl.'s Mot. for Partial Summ. J., at 1 ("Pl.'s Mot."). Defendant argues it is entitled to summary judgment because Citizens cannot meet the Bond's requirements for coverage. ECF No. 50, Def.'s Mot. for Summ. J., at 2 ("Def.'s Mot."). The Court finds Plaintiff meets the Bond's possession requirement. However, the Court finds there is a genuine issue of material fact as to whether Citizens relied upon the original signed Note or

Mortgage before it purchased its participation interest. The Court finds there is also a genuine issue of material fact as to whether Citizens acted in good faith.

### A. Plaintiff Meets the Possession Requirement of "On the Faith."

The parties dispute the meaning of "representative authorized to possess" the loan documents on behalf of Citizens. Plaintiff argues Snowberry and Montage were representatives authorized to possess the loan documents on its behalf, and both had possession of the loan documents at the time of funding. Pl.'s Mot. at 2. Therefore, Plaintiff argues it meets this precondition of coverage. *Id*. at 8. The Bond fails to define the language at issue; thus, Citizens relies on caselaw to show Snowberry and Montage were both representatives authorized to possess the loan documents. Pl.'s Mot. at 8, 13.

In *Beach Community Bank v. St. Paul Mercury Ins. Co.,* the Eleventh Circuit analyzed the exact same bond language as used in this case. 635 F.3d 1190, 1199 (11th Cir. 2011). In *Beach Community Bank*, the bond required the Bank have possession of loan documents when it extended credit. *Id.* However, Beach Community obtained loan participation coverage under the bond, "which allowed the requirement of actual possession to be satisfied when 'a correspondent bank or other representative authorized to possess [documents such as guaranties]' possesses them 'on behalf of the [insured bank].'" *Id.* Based on the language of the agreement and the facts, the Court rejected the defendant's argument that the insured failed to satisfy the "actual physical possession requirement" *Id*. The court held the title company facilitating the transaction was not an agent of the Beach Community because of its status as a title company; however, the Court recognized that a closing agent does owe certain duties to the lending institution. *Id.* Specifically, the Eleventh Circuit recognized that the closing agent on the loan had a duty to

5

"follow closing instructions" and "have signatures obtained and/or placed on the documents, collect them up, and send them back." *Id.*

Plaintiff analogizes to the facts here, pointing out that Snowberry was the closing agent with a duty to follow closing instructions and obtain signatures. Pl.'s Mot. at 9. Furthermore, Leslie's testimony establishes that Snowberry did have actual physical possession of the Loan Documents before funding.[1] *Id.* Thus, Plaintiff asserts it meets the possession requirement of the Bond because Snowberry was a representative authorized to possess the loan documents on behalf of the insured, and did in fact possess the Loan Documents at the time of funding.[2] Pl.'s Mot. at 11.

As for Montage's status as a representative authorized to possess the loan documents for Citizens, Plaintiff relies on *BancInsure, Inc. v. Highland Bank*, No. 11-2497, 2012 WL 6217375 (D. Minn. Dec. 4, 2012). Pl.'s Mot. at 13. There, the bond required possession by a correspondent bank or authorized representative. *Id*. at *3. The Court held the insured met the possession requirement because its lead bank qualified as an authorized representative. *Id*. at *2. The bank was (1) the primary contact with the lessee; (2) obtained all information regarding the lessee; (3) collected and remitted payments; (4) the transaction was similar to the insured's loan participations with other banks; (5) it paid applicable taxes; and (6) the insured retained control of the transaction and the location of the original documents because it was the source of funding. *Id*. at *5–6. According to Plaintiff, the relationship in *BancInsure* parallels the

---

[1] Leslie was the owner of Snowberry, and therefore its agent. RESTATEMENT (THIRD) AGENCY § 3.15 (2005) ("When an agent is itself a corporation or other legal person, its officers . . . are subagents."). Because the actions of an agent on the principal's behalf have "the same force and effect as if the principal had performed the act itself, possession by Leslie establishes possession by Snowberry. *See Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 697 (Tex. 2017).

[2] In *Beach Community*, the Eleventh Circuit held that summary judgment was not appropriate because "[the closing agent's] testimony at his deposition creat[ed] a factual question about his relationship with Beach Community . . . " *Id*. at 1199. However, in this case, Leslie's Affidavit confirms Snowberry acted as the closing agent, Snowberry actually possessed the loan documents, and Snowberry received funds from Citizens. App., ECF No. 48–1, at 645. Thus, the fact issues present in *Beach Community* are not present in this case.

relationship Citizens has with Montage: (1) Montage was the primary contact with the borrowers; (2) Montage was responsible for obtaining information on the borrowers, (3) Montage was responsible for servicing, managing, and collecting the mortgage loans, including forwarding payments to Citizens; (4) the transaction was a loan participation; (5) Montage was responsible for monitoring the borrower's compliance with insurance and tax obligations; and (6) Citizens controlled the transaction and the location of the original documents because it was not only the source of funding, but also required Montage to provide the documents at the time of the sale. Pl.'s Mot. at 14. Plaintiff asserts that Montage qualifies as an authorized representative, and so it therefore must also qualify as a "representative authorized to possess." *Id.* at 14–15. Because Montage meets a more heightened standard than the Bond requires, and because it did possess the necessary documents at the time of Citizens' funding, Plaintiff claims it has established possession through Montage. *Id.* at 16.

Plaintiff also relies on language from the contracts it entered into with Montage to show that the relationship it had with Montage would satisfy the Bond's condition, and even a stricter standard than the Bond sets. *Id.* at 15. The Agreements contain warranties and representations regarding the bona fide nature of the 12 Loans, rather than disclaimers. *Cf. Bank of Bozeman v. BancInsure, Inc.*, 404 Fed. Appx. 117, 118 (9th Cir. 2010) (granting summary judgment against insured on possession by "authorized representative" where agreements with lead banks made "no warranty or representation of any kind" regarding collateral and stated that participating bank was "relying on its own due diligence . . . and not on any representations, warranties or statements" of lead banks). *Id.* Montage warranted that the 12 Loans were: (1) owned by Montage; (2) made in accordance with secondary-marketable underwriting standards; (3) executed by the borrower; (4) made and acquired in compliance with all applicable laws;

7

(5) contained no falsifications; and (6) loans that Montage had the power and authority to originate, market, sell, and service.

Conversely, Defendant contends Snowberry and Montage cannot qualify as either correspondent financial institutions or authorized representatives, and therefore Citizens cannot meet the Bond's possession condition. Def.'s Mot. at 10. Citizens does not attempt to argue that Snowberry and Montage are correspondent financial institutions, so the Court will not address that issue. *See* ECF No. 48. Defendant cites a number of cases dealing with agency law to support its argument that neither entity constitutes representatives authorized to possess loan documents on behalf of Citizens. Def.'s Mot. at 10–13. Defendant attempts to show that because Montage and Snowberry lacked an agency relationship with Citizens, neither can qualify as authorized representatives. Def.'s Mot. at 12, 13.

At the onset, the Court notes that the Insuring Agreement does not define the operative language under dispute. App. 142. Further, this language only appears once throughout the entirety of the agreement, whereas "agent" is used over thirty times throughout and "authorized representative" appears seven times. App. 12–186. Significantly, "agent" and "authorized representative" are nowhere to be found in the possession clause of the insuring agreement. App. 141–42. This Court must attempt to give effect to all contract provisions so that none are rendered meaningless. *Kelley-Coppedge, Inc. v. Highlands Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998).

Defendant tries to characterize the Agreement as requiring Montage and Snowberry be "authorized representatives" of Citizens to satisfy the possession requirement, which ignores the

actual language of the agreement.³ Moreover, at a hearing held by the Court on this issue, Defendant argued that this is no difference between "authorized representative" and "representative authorized." *See* Hrg. Tr., ECF No. 87. The Court cannot agree.

First, the language used throughout the Bond supports the argument that "agent" and "authorized representative" do not mean the same thing as "representative authorized." As previously mentioned, neither agent nor authorized representative appear in the possession clause of Insuring Agreement E. Thus, had Travelers desired to use the caselaw tested "authorized representative" in the possession requirement of this bond (as it did repeatedly in other instances), it could have done so. *See King v. Dallas Fire Ins. Co.*, 85 S.W.3d 185, 193 (Tex. 2002) ("[O]ur duty is to give effect to all contract provisions, and render none meaningless.").

Moreover, while Defendant shows a sound understanding of the principles of agency law, it does little to convince this Court that the Insuring Agreement's "representative authorized to possess" language requires an agency relationship. Most, if not all, of the cases cited by Defendant use the industry standard bond language of "authorized representative," rather than the language at issue, "representative authorized to possess." *See* Def.'s Mot. at 7. Thus, the Court believes the cases offer little value in resolving the issue in this case.

The Court agrees with Plaintiff that Montage and Snowberry were representatives authorized to possess the loan documents on Citizens' behalf, and that Montage and Snowberry did possess such documents at the time of funding.⁴ Additionally, because Snowberry was acting

---

³Defendant repeatedly throughout the Motion couches it's argument on the phrase "authorized representative." *See* Def.'s Mot. at 10–15. However, Defendant neither acknowledges the bond's language "representative authorized to possess" nor does it attempt to explain how the phrases have the same meaning. *Id.*

⁴From October 2015 through October 2017, Citizens purchased 144 participation interests in loans originated by Montage and closed by Snowberry, to be sold to Mortgage Capital Management, totaling $31,908,808.88. App. at 7, ¶ 8. In 2016, Citizens approved Snowberry as an authorized closing agent, which included the entry of Snowberry in Citizens' Warehouse Lending Software System ("WLS"). WLS is an industry-standard automated computer software program Citizens uses to communicate with mortgage banks; collect and store TMPP loan documents; and track, store, and send or receive information regarding TMPP loans. After the 2016 entry into

9

as the closing agent for the transactions, it owed some duties to the parties to the transaction, such as to disburse the funds to those entitled to receive it, obtain signatures, and follow closing instructions. *See Trevino v. Brookhill Capital Res., Inc.*, 782 S.W.2d 279, 281 (Tex. App.—Houston [1st Dist.]1989, writ denied) (escrow agent owes fiduciary duty to conserve the money and pay it only to those persons entitled to receive it); *see also Beach Community*, 635 F.3d at 1199. Thus, although the Court agrees that Snowberry would not be considered an "agent" of Citizens under these facts, the Court finds that Snowberry is a representative authorizes to possess the loan documents at issue here. [5]

In *Peoples State Bank v. Progressive Cas. Ins. Co.*, the Fifth Circuit affirmed the district court's decision not to read a "heightened burden" into a Bond where it is not otherwise stated. 478 Fed. Appx. 858, 859 (5th Cir. 2012) (holding that though the coverage agreement required "actual physical possession" of certain documents as "a condition precedent to the Insured's having relied on the faith of such items," that condition did not compel review or verification of the loan documents before extending credit), *aff'g* 2011 WL 2748441 (W.D. La. 2011). .Thus, the court cannot require Snowberry or Montage to be an agent or an authorized representative of Citizens where the bond's language merely requires "representative authorized to possess" the loan documents on behalf of Citizens at the time the bank purchased its participation interests.

---

WLS, Citizens could only wire funds to Snowberry's account if Snowberry was manually entered as an approved and authorized closing agent within WLS. Citizens' authorization of Snowberry to serve as closing agent included the authorization to hold the original, signed, loan documents. App.at 6, ¶ 6. Before Citizens wired funds, Montage and Citizens agreed that Snowberry was authorized to possess the Loan Documents on behalf of Citizens, and that Montage would provide such documents to Citizens at the time it purchased a participation interest, but not later than five days after. App. at 8, ¶ 12. Scott Leslie owned Montage, Snowberry, and Mortgage Capital Management. In his affidavit, Leslie stated he possessed the loan documents. App. 1016.

[5]Such a finding makes sense in the commercial context at issue in this case. The whole purpose of a closing agent is to ensure that all parties are protected, to ensure that the funds are appropriately received, and that the participation is appropriately completed. App. 1007:10–14.

### B. Plaintiff May or May not Meet the Reliance Requirement of "On the Faith."

While the Court agrees with Plaintiff on the possession issue, the analysis is not complete. The Court must consider whether Citizens meets the Bond's other requirements. Citing *Peoples State Bank* again, Plaintiff contends it meets the reliance requirement of "on the faith" because it would not have issued any funds had it known the twelve loans were forged. Pl.'s Mot. at 17. There, the Fifth Circuit indicated that in a coverage dispute like here, where the insured also purchased loan participation coverage, reliance may be established if "it is . . . undisputed that [the bank] extended credit . . . in exchange for a security interest in the loans and mortgages, thereby relying on the documents as collateral" and if the bank "would not have extended credit . . . had it known the loan packages were counterfeit or forged. *Peoples State Bank*, 478 Fed. Appx. at 859. Conversely, Defendant argues Citizens cannot satisfy this requirement because Citizens could not have relied on a copy of the loan documents, let alone an original, as the necessary loan documents were not even drafted when Citizens decided to purchase its interests. Def.'s Mot. at 18–19.

The Court finds there is a genuine issue of material fact as to whether Plaintiff relied on the necessary documents when it purchased its participation interest. Defendant reasonably disputes Plaintiff's reliance on the loan documents as collateral when it issued the funds. Citizens' own president and CEO, Harold Allison III, testified that the decision to purchase a participation interest occurred before the original loan documents, loan and mortgage, or Deed of Trust were created. *See* Exhibit 1 at App. 080. However, that does not preclude reliance. *First National Bank in Manitowoc v. Cincinnati Insurance Co.*, No. 03-C-241, 2005 WL 2460719, at *3 (E.D. Wis. 2005) (applying Texas law) ("[I]n in the course of approving a loan a bank would typically rely upon a series of documents, events, verbal representations and other factors, any

one of which could be said to have influenced the bank's action . . . "). Accordingly, summary judgment is improper.

   C. **Citizens May or May not Have Acted in Good Faith.**

Finally, the Court must consider whether Plaintiff acted in good faith when it purchased its participation interests. Plaintiff contends it meets this requirement because its conduct cannot rise to the level of bad faith: "There is no dispute here that Citizens . . . did not 'deliberately seek to lose' over $3.8 million on the loans in which it participated, as would be required to show bad faith." Pl.'s Mot. at 20. On the other hand, Defendant alleges that Citizens ignored a "sea red flags," which amounted to selective ignorance, evidencing bad faith. Def.'s Mot. at 22. To bolster this point, Defendant points to a "FRAUD VICTIM ALERT" warning included in one of the loans. *Id*. While certainly a red flag, the Court is not convinced Plaintiff's failure to investigate the warning further amounts to bad faith. However, the Court is also not wholly convinced that Citizens' lack of due diligence, which would have uncovered more red flags, evidences "honesty in fact and the observance of reasonable commercial standards of fair dealing." UCC § 3–103(a)(4). Consequently, neither party is entitled to summary judgment on whether Citizens' meets the Bond's good faith requirement because there is a genuine issue of material fact.

## IV. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Partial Summary Judgment is **GRANTED IN PART** with respect to Plaintiff's claim that it satisfies the Bond's possession requirement and **DENIED IN PART** with respect to Plaintiff's claim that it satisfies the Bond's reliance and good faith requirements. Defendant's Motion for Summary Judgment is **DENIED**.

**SIGNED** this 2nd day of April 2020.

_____
ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE